THOMPSON, Judge.
The employer appeals a workers’ compensation order awarding claimant temporary total disability (TTD) benefits from March 21,1980 to July 6,1981, and reserving jurisdiction to determine a reasonable attorney’s fee. We reverse the award of TTD benefits from March 21, 1980 to July 6, 1981.
The claimant, a quality verification clerk, sustained a compensable injury to her right wrist January 9, 1980 while pulling apart forms. The right-handed claimant had a high school education and subsequent to her accident had attained her associate degree in business. Her employment experience includes: babysitter; hotel maid; cashier-clerk at a convenience store; assistant manager of a grocery store; diner manager; clerk-secretarial position; and working in a bank. Claimant was paid TTD benefits from January 12, 1980 through January 20, 1980, and from January 22, 1980 through February 4,1980. Subsequent to the injury the claimant worked a few days in January and worked from about February 4, 1980 until March 21,1980, when she had to cease due to pain.
She was first seen by Dr. Bourguignon, an orthopedist, on January 11, 1980, who diagnosed a distal radioulnar sprain. He discharged claimant on February 26, 1980, expecting that her soreness would gradually improve. On March 10, 1980, he found no objective abnormality, despite her complaints of pain. He recommended physical therapy with a recheck afterwards and indicated she could continue working.
Claimant expressed dissatisfaction with Dr. Bourguignon, and the employer authorized Dr. Stanford, another orthopedist, who on January 29,1980, diagnosed a distal radioulnar sprain which he felt was resolving satisfactorily. Dr. Stanford recommended she remain under Dr. Bourguig-non’s care. After the claimant expressed dissatisfaction with Dr. Stanford, the employer authorized Dr. Carducci, still another orthopedist. His March 21, 1980 report indicates claimant may have had a sprained wrist with mild secondary synovitis of her wrist. However, he was unable to find any orthopedic pathology to explain her symptoms. Due to claimant’s dissatisfaction with the previous doctors, the employer then authorized a neurologist, Dr. Brunson. After an examination on April 22,1980, Dr. Brunson found no objective neurological disorder to account for her arm and wrist pain.
She was seen by Dr. Couch, a chiropractor, on May 30,1980, who testified that she was unable to do any work involving the use of her right arm from May 30, 1980 until November 3, 1980, and that she could not use her injured arm during this period. He further testified that she should not use her injured arm from the period of November 3, 1980 until March 4, 1981.
There is absolutely no medical testimony that the claimant could not work from March 21, 1980 to May 30, 1980. On the contrary, the testimony of three orthopedists and a neurologist indicated that the claimant could return to work. The claimant’s complaints of pain unsupported by *307 medical testimony cannot be a basis for an award of TTD benefits. See Tallahassee Coca Cola Bottling Co. v. Parramore, 395 So.2d 275 (Fla. 1st DCA 1981); Walter Glades Condominium v. Morris, 393 So.2d 664 (Fla. 1st DCA 1981). Accordingly, the TTD benefits from March 21, 1980 to May 30, 1980 are reversed.
During the period of time the claimant was awarded TTD benefits and contended she could not work because of pain, she was hospitalized twice for complaints and pain totally unconnected with her accident. During her hospitalization in April 1980 by Dr. Beckner, a gastrointestinal series and gallbladder examination were normal. She saw Dr. Beckner again in August 1980 and he referred her to Dr. Hellinger with the chief complaint of pain in the base of the neck, down the back, and neutrope-nia dating back to 1971 or 1972. Claimant gave Dr. Hellinger a long history of pain and said she had not worked for several months because of medical problems. According to the claimant’s history, she was doing relatively well until August 3, 1980, when she suddenly developed pain at the base of her neck. She gave a medical history of a distal radioulnar sprain of the right hand within the last few weeks, although it had actually occurred approximately eight months before. The history contains no complaint of pain or problems with the right wrist. She was discharged by Dr. Hellinger with a diagnosis of mitral valve prolapse and benign neutropenia, both totally unconnected with the accident. In August 1980, she was also seen by a psychiatrist, who was inclined to believe that in spite of the negative results of her medical evaluations the claimant had a physical illness. He was of the further opinion that there had been a slow healing of the industrial accident, but that myalgias, a rheu-matie-like muscle pain, totally unrelated to the industrial accident had developed. He did not believe that the industrial accident caused any psychiatric disorder, or that it caused any type of exacerbation or triggering of the myalgias.
In view of her education and previous experience as babysitter, hotel maid, clerk cashier at a convenience store, assistant manager of a grocery store, diner manager, clerical-secretarial position, and bank worker, many of which could be performed without the use of her right hand, the award of TTD benefits from May 30, 1980 until March 26, 1981 is reversed without prejudice to the claimant’s right to make a claim for temporary partial disability benefits during this period and to prove any wage loss she may have sustained after making a good faith work search for jobs she was qualified to do by her education, experience, and limitations.
Dr. Couch testified the claimant could return to work not involving the use of her right wrist on November 3, 1980. She was seen by Dr. Mumby on March 4, 1981, who said the claimant was able to do light clerical work and released the claimant to work without any restrictions on March 26, 1981. There is no medical evidence that the claimant could not work from March 26,1981 to July 6,1981, and the TTD benefits awarded during this period of time are reversed.
The body of the order states that the “matter of attorney’s fees should be the issue at a separate hearing.” (Record at 324). If this same language had also been used in the decretal portion of the order, the order would have been non-final and non-appealable with regards to the attorney’s fee issue. However, the decretal portion of the order reserves “jurisdiction for the determination of a reasonable attorney’s fee at a separate hearing.” (Record at 325). It is not clear whether this language was intended to create an entitlement to a fee. If this language was not intended to create entitlement to a fee, it is non-final and non-appealable on that point. However, if the language is intended to determine entitlement to a fee, the order is appealable with regards to the attorney’s fee issue and is reversed. See Monroe County Sheriff’s Department v. Ruth, 424 So.2d 905 (Fla. 1st DCA 1983).
Reversed and remanded for further proceedings consistent with this opinion.
MILLS and JOANOS, JJ., concur.